UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                      )
UNITED STATES OF AMERICA,             )
                                      )
                Plaintiff,            )  Criminal Docket
                                      )  No. 1:11-cr-10165-RGS
vs.                                   )  August 23, 2011
                                      )  11:00 a.m.
TIMOTHY CORREIA, ET AL,               )
                                      )
                Defendants.
```

RULE 11 HEARING

BEFORE:  THE HONORABLE RICHARD G. STEARNS
         UNITED STATES DISTRICT JUDGE

John Joseph Moakley United States Courthouse
1 Courthouse Way, Courtroom No. 21
Boston, MA  02210

Helana E. Kline, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
1 Courthouse Way, Room 5209
Boston, MA  02210

APPEARANCES:


For the Government:


United States Attorney's Office
(By:  Rachel S. Rollins, Assistant U.S. Attorney)
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts  02210
617-748-3398



For the Defendant:


Law Office of James Budreau
(By:  James H. Budreau, Attorney at Law)
20 Park Plaza, Suite 1405
Boston, Massachusetts  02116
617-338-5587

P R O C E E D I N G S

1

2      THE CLERK:  All rise.  All persons having business

3   before the Honorable Richard G. Stearns, United States

4   District Judge, now sitting at Boston within and for the

5   District of Massachusetts, may draw near, give their

6   attendance, and they shall be heard.  God save the United

7   States of America and this Honorable Court.  Court is open.

8   Please be seated.

9      The case before this Court carries Case No. 11-cr-10165,

10  United States of America versus Timothy Correia.  Counsel,

11  please identify yourselves for the record?

12      MS. ROLLINS:  Good morning, your Honor.  Rachel

13  Rollins for the government.

14      MR. BUDREAU:  And, your Honor, James Budreau on

15  behalf of Mr. Correia.  Good morning.

16      THE COURT:  Good morning.  Mr. Budreau, I gathered

17  from the clerk that your client is offering to plead guilty

18  to the one-count indictment; there is no plea agreement?

19      MR. BUDREAU:  Correct, your Honor.

20      THE COURT:  All right.

21      THE CLERK:  Mr. Correia, Count 1 of the indictment

22  filed by the United States Attorney charges you with dealing

23  in firearms without a license on or about July 13, 2010,

24  and November 29th, 2010, in violation of Title 18, United

25  States Code, Section 922A1(a), to which count you

1    previously plead not guilty.  Do you now wish to change

2    your plea?

3            THE DEFENDANT:  Yes.

4            THE CLERK:  And how do you plead to Count 1, guilty

5    or not guilty?

6            THE DEFENDANT:  Guilty.

7            THE CLERK:  Please raise your right hand.

8            (Timothy Correia duly sworn.)

9            THE CLERK:  Would you please take a seat in the

10   witness box.  Counsel, would you join him please?

11           MR. BUDREAU:  Yes.

12           THE COURT:  Good morning, Mr. Correia.  My name

13   is Richard Stearns; and as is evident, I'm a judge of the

14   United States District Court.  Before I can accept your plea

15   in the case I'm going to ask some questions.

16       The reason for the questions is that I have to make my

17   own determination that your decision to plead guilty is a

18   voluntary decision and one made with the full knowledge of

19   the consequences of pleading guilty.

20       Now, anything I say that is confusing or seems imprecise

21   either ask me to rephrase it or feel free to consult with

22   your lawyer before you answer.  Okay?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Okay.  For the record, can you tell us

25   your full name?

```
 1              THE DEFENDANT:  Timothy Correia.
 2              THE COURT:  How old are you, Mr. Correia?
 3              THE DEFENDANT:  19.
 4              THE COURT:  19.  Where were you born?
 5              THE DEFENDANT:  Brockton.
 6              THE COURT:  I'm sorry?
 7              THE DEFENDANT:  Brockton, Massachusetts.
 8              THE COURT:  In Brockton, and you grew up in Brockton?
 9              THE DEFENDANT:  Yes, sir.
10              THE COURT:  All right.  Did you attend school in
11       Brockton?
12              THE DEFENDANT:  Yes, sir.
13              THE COURT:  How far did you go?
14              THE DEFENDANT:  I went to 11th grade.
15              THE COURT:  So you went to Brockton High School?
16              THE DEFENDANT:  I went to Brockton High School.
17              THE COURT:  And you left during or at the end of the
18       11th grade?
19              THE DEFENDANT:  It was like during.  It was during
20       the year.
21              THE COURT:  During the year?
22              THE DEFENDANT:  Yeah.
23              THE COURT:  Do you have your GED?
24              THE DEFENDANT:  No, sir.
25              THE COURT:  No.  When you left school, what did you
```

```
1   do?

2           THE DEFENDANT:  Nothing.

3           THE COURT:  Did you work?

4           THE DEFENDANT:  No.

5           THE COURT:  Not really.  Are you married?

6           THE DEFENDANT:  No, sir.

7           THE COURT:  Do you have children?

8           THE DEFENDANT:  No, sir.

9           THE COURT:  Is your family in Brockton?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Brothers, sisters?

12          THE DEFENDANT:  I have four sisters and two brothers.

13          THE COURT:  So it's a big family?

14          THE DEFENDANT:  Right.

15          THE COURT:  So do you have any trade or profession?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  This question I'm not asking to be

18  intrusive, I'm required to ask it:  have you ever been

19  treated for any mental condition or psychological problem?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  Are you presently taking any prescription

22  medication?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  So as far as you're concerned as you

25  sit here, your mind is clear, you understand the nature of
```

1   the proceeding?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  This document is called an

4   indictment.  An indictment is itself not evidence of a crime.

5   It simply notice to the person named in the indictment that

6   he must answer to the charge that the indictment sets out.

7   Okay.

8      Have you read the indictment?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Have you discussed it with Mr. Budreau?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Has he explained to you the elements of

13   the offense charged?  By "elements" a lawyer would mean the

14   critical components of the offense that the government

15   would have to prove beyond a reasonable doubt to obtain a

16   conviction.

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay, and Let me be very brief.

19   Essentially, what the indictment charges is that during a

20   period between July and November of 2010, that is last year,

21   you engaged in the business of dealing which usually means

22   selling or transferring the possession of a firearm to

23   someone else without being authorized to do so by law.

24      To be authorized by law one has to be licensed as a

25   firearms dealer.  The indictment alleges that you did not

1    have a license.  Nonetheless, the firearms that were dealt

2    with, which were seven in number, and they're specified in

3    the indictment, were all transferred to another's

4    possession, again, without a license to do so.

5        Do you understand that that's what the charge is?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Now, let me ask the prosecutor what the

8    maximum penalties for the offense are?

9            MS. ROLLINS:  Yes, your Honor.  There's a five-year

10   maximum prison sentence, a fine of up to $250,000,

11   supervised release of three years, and a special assessment

12   of $100.

13           THE COURT:  Do you understand that those are the

14   maximum penalties; that is, if you go to the statute book

15   and look for the maximum penalties, that's what you'd find?

16           THE DEFENDANT:  Yes.

17           THE COURT:  I don't want to know anything about the

18   details.  Have you ever been convicted of a crime previously?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  All right.  Do you understand that this

21   is a felony crime.  Conviction of a felony carries with

22   it certain civil or what lawyers would say "collateral

23   consequences" that may affect a person's civil rights:  the

24   right to vote, the right to serve on a jury, and related to

25   the offense, the right to possess a firearm or ammunition

1    of any kind.

2        Do you understand that that's a consequence as well?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Mr. Budreau, have you looked at the

5    sentencing guidelines?

6            MR. BUDREAU:  I have, your Honor.

7            THE COURT:  Have you discussed it with the

8    government?

9            MR. BUDREAU:  I have, your Honor.  We both concur it

10   would be in the 18- to 24-month range.

11           THE COURT:  18 to 24 months?

12           MR. BUDREAU:  Correct.

13           THE COURT:  Ms. Rollins, the government agrees with

14   that?

15           MS. ROLLINS:  We do, your Honor.

16           THE COURT:  In that case it may not be necessary

17   for me to explain in any length since it appears that the

18   sentencing guidelines aren't an issue.

19           MR. BUDREAU:  I would agree, your Honor.

20           THE COURT:  Okay.  Mr. Correia, let me explain that

21   the guidelines that the lawyers are referring to are the

22   recommended sentencing range that a commission appointed

23   by Congress years and years ago had issued in terms of

24   recommendations to judges about what judges should, in

25   the eyes of the commission, do or not do in matters of

1    sentencing.

2        There was a time five or six years ago that a judge

3    would have told you that the guidelines were pretty much

4    mandatory within the circumstances of the case.  Given

5    recent developments in Supreme Court law, that's no longer

6    true.  The guidelines are, as the term implies, advisory;

7    that is, a judge is to look to them, and if the judge

8    finds that the result under the sentencing guidelines is

9    reasonable, the judge should sentence within that range.

10       If the judge on the other hand finds that it's an

11   unreasonable recommendation, in that the sentence should be

12   greater or lesser than the range than the guidelines

13   prescribe, the judge is empowered to use his or her

14   discretion and impose the sentence that seems appropriate.

15       Where here there's an agreement between your counsel

16   and the government, that's an 18- to 24-month sentencing

17   range is the one that the guidelines recommend, what I can

18   tell you is that I would not exceed the 24-month maximum

19   without giving you the chance to first withdraw your plea.

20       Do you understand that?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Okay.  But other than that assurance,

23   the likelihood of the sentence falling within that range is

24   pretty good; although, we won't know until we see the

25   presentence report.

1    Again, do you understand that?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  All right.  Do you understand that when

4    you plead guilty, you give up the right to have your case

5    tried before a jury?

6        THE DEFENDANT:  Yes.

7        THE COURT:  Have you ever seen a jury trial?

8        THE DEFENDANT:  No, sir.

9        THE COURT:  Okay.  Let me explain that under the

10   U.S. Constitution while judges are given great deal of

11   authority over matters of law binding determinations of

12   fact, for example, whether a person is guilty or not guilty

13   of a crime, if either the defendant or the government

14   insists on it may not be found by the judge but by a panel

15   of citizens, 12 in number, called the jury.

16       The jury in federal cases is selected from citizens of

17   the United States who live in the eastern part of the state,

18   and the same jurors basically who would appear in the state

19   county courts for trial, it's just that we draw from a

20   larger geographic area, but we chose the same jurors in

21   choosing our juries.

22       On the day a case is scheduled for trial those

23   designated, picked randomly by computer, are instructed

24   to appear here in the courtroom.  When they do, they're

25   interviewed, mostly by the judge but the lawyers participate

1    as well, to determine their eligibility to sit on the case

2    to be tried.

3       During the process of choosing the 12, a defendant is

4    permitted to object to any 10 for whatever reason he does

5    not want seated while the government can object to any 6

6    that it for whatever reason does not want to serve on the

7    jury that's being composed.  The jury, after they hear the

8    evidence, are required to be unanimous as to whether the

9    person has or has not committed the offense being tried.

10      So do you understand that by giving up the right to

11   have your case tried before a jury I mean not only the right

12   to have a jury make the determination as to whether, in fact,

13   you are guilty or not guilty of this offense, but also the

14   right to participate in the selection of the very jury that

15   would make that decision.  Is that all clear?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you understand that you would be

18   entitled to Mr. Budreau's assistance throughout the jury

19   selection process and throughout the trial of the case?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Do you understand that I would instruct

22   the jury that they must presume you innocent unless and

23   until the government succeeds in proving your guilt beyond

24   a reasonable doubt?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that the burden of

2   proof in a criminal trial is proof beyond a reasonable doubt,

3   a very heavy burden that the government bears throughout the

4   trial?

5          THE DEFENDANT:  Yeah.

6          THE COURT:  Do you understand that in practical

7   terms because the burden of proof rests with the government

8   you would have no obligation to prove your innocence, to

9   call any witnesses, to produce any evidence, nor certainly

10  could you ever be compelled to testify at trial?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you also understand that by pleading

13  guilty you give up the right to testify before the jury in

14  your own defense to offer evidence that you think might be

15  exculpatory or mitigating?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that you give up the

18  right to confront the witnesses against you; that means that

19  Mr. Budreau can ask questions of the government's witnesses?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And do you understand you give up the

22  right to remain silent at least for purposes of today's

23  proceeding?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Let me ask the prosecutor to summarize

1    the evidence that she would present if the case proceeded to

2    trial.  When she finishes, I have to ask if you agree that

3    you did the things, the important things, that she alleges.

4    By "important things," I mean not details, I mean those

5    things that make up the proof of the elements of the crime

6    charged.

7        All right.  Ms. Rollins?

8        MS. ROLLINS:  Yes, your Honor.  ATF used a

9    cooperating witness to make several controlled purchases

10   of firearms from Mr. Timothy Correia.  There were six

11   transactions total, your Honor, and seven guns in all that

12   were purchased from him.  In each instance the government

13   would prove that the cooperating witness called Mr. Timothy

14   Correia, placed an order, agreed on a meeting location and

15   a price.  The cooperating witness was then searched and

16   equipped with a recording device, given ATF funds, your

17   Honor, surveyed during the transaction, and immediately

18   debriefed after the transaction, and stripped of any firearms

19   and ammunition or extra ATF funds that were actually

20   purchased from Mr. Correia or left over as a result of the

21   transaction.

22       In each of the instances, your Honor, that I'm about

23   to describe those series of events occurred.  The government

24   would prove that on July 13th, 2010, the cooperating witness

25   contacted Timothy Correia, Olivio Correia, his brother,

who's also charged in the same indictment, was seen in the

surveillance video during this transaction in the purchase

of a Walther .380 caliber semiautomatic pistol with an

obliterated serial number and an Uberti gun as well.

On July 22, 2010, the government would prove that the

cooperating witness contacted Timothy Correia and purchased

a Cobra semiautomatic pistol.  The government would prove

that on August 4th, 2010, your Honor, the cooperating

witness purchased a Rugger .357 caliber revolver from

Mr. Timothy Correia.

The government would prove that on August 9th, 2010, the

cooperating witness purchased from Mr. Timothy Correia a

Mossberg .12 gauge sawed-off shotgun.  On August 11th, 2010,

the government would prove that the cooperating witness

contacted Mr. Timothy Correia.  Mr. Timothy Correia did not

arrive; he sent his brother, Olivio Correia, who then showed

up and sold the cooperating witness a Smith & Wesson .38

caliber revolver.

Mr. Correia was not seen, Timothy was not seen in any

video on that day, but there were calls placed to him to set

up that transaction.

The government finally, your Honor, would prove that

on November 29, 2010, the cooperating witness contacted

Timothy Correia and purchased a Jimenez .380 caliber

semiautomatic pistol.

1    Your Honor, the government would also prove that during

2    all relevant time periods discussed between July and November

3    of 2010 Timothy Correia did not have a federal firearms

4    license.  The government would prove that all guns mentioned

5    traveled in interstate and/or foreign commerce, and the

6    government would be able to prove that all of the guns were

7    firearms.

8    Lastly, your Honor, there is a forfeiture allegation but

9    because of the fact that the government seized all of the

10   weapons and ammunition at the end of the transaction, there's

11   nothing to forfeit at this time.  That's what the government

12   would be proving.

13   THE COURT:  All right.  Mr. Correia, the allegations

14   and the offer of evidence is that on the dates specified you

15   sold seven firearms either directly yourself or working with

16   your brother to a person who you obviously didn't know was a

17   cooperating government witness, and that at no time during

18   any one of these transactions did you have a firearm dealer's

19   license.  Is that true?  Do you accept responsibility for the

20   offenses as alleged?

21   THE DEFENDANT:  Yes, sir.

22   THE COURT:  Are you offering to plead guilty

23   willingly, freely, and voluntarily?

24   THE DEFENDANT:  Yes, sir.

25   THE COURT:  Has anyone coerced you in a physical

1 sense into pleading guilty?

2 THE DEFENDANT: No, sir.

3 THE COURT: Have any secret promises been made to

4 induce you to plead guilty?

5 THE DEFENDANT: No, sir.

6 THE COURT: Have any threats been made other than

7 obviously the threat of being prosecuted?

8 THE DEFENDANT: No, sir.

9 THE COURT: Have you had sufficient time to discuss

10 with Mr. Bourbeau (sic) the charge in the case, your rights,

11 your possible defenses, and the consequences of pleading

12 guilty?

13 THE DEFENDANT: Yes, sir.

14 MR. BUDREAU: Your Honor, I smile a little bit

15 because people confuse me often with Mike Bourbeau.

16 THE COURT: I'm sorry.

17 MR. BUDREAU: That happens often.

18 THE COURT: No, I'm sorry.

19 MR. BUDREAU: I'm better looking I have to say.

20 MS. ROLLINS: I object to that.

21 THE COURT: That is exactly what I was thinking,

22 Mr. Budreau. I'm sorry.

23 Do you feel that at all times he's acted in your best

24 interests?

25 THE DEFENDANT: Yes, sir.

1          THE COURT:  Mr. Correia, have I confused you by

2    anything I've said or any question I've asked?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Do you understand that you're pleading

5    guilty because you are guilty and given the strength of the

6    government's evidence you feel it's in your best interests

7    to plead guilty?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Does counsel have any other areas you'd

10   like me to inquire into?

11         MS. ROLLINS:  No your Honor.

12         MR. BUDREAU:  No, your Honor.

13         THE COURT:  Mr. Correia, if you'd step back to the

14   counsel table with Mr. Budreau, please.

15      All right.  I find Mr. Correia is well-oriented, that his

16   answers have been responsive to my questions.  I find that

17   he understands the nature of the charge and the potential

18   penalties that he faces.  I find that he is competent to

19   enter a plea; that he has done so with the full understanding

20   of his rights, and the consequences of waving those rights.

21   I also find that there is a sufficient basis in the facts

22   alleged by the government as acknowledged by the defendant to

23   warrant a finding of guilt on the offense beyond a reasonable

24   doubt and so I find that the plea is entered voluntarily,

25   with full knowledge of its consequences, and after careful

1    consideration by the defendant and advice of experienced

2    counsel of his own best interests, I will accept the plea,

3    and we will schedule sentencing for November 17, 2011, at

4    3 p.m.

5        All right.  If counsel have nothing further on this

6    matter today, we will be recessing.

7            MS. COLLINS:  No, your Honor.

8            MR. BUDREAU:  No, your Honor.  Thank you.

9            THE CLERK:  All rise.

10           (Whereupon, the proceedings concluded at 11:25 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               C E R T I F I C A T E

2

3        I, Helana E. Kline, a Registered Merit Reporter,

4    Certified Realtime Reporter, and Federal Official Court

5    Reporter of the United States District Court, do hereby

6    certify that the foregoing transcript, from Page 1 to

7    Page 20, constitutes, to the best of my skill and ability,

8    a true and accurate transcription of my stenotype notes

9    taken in the matter of the United States of America v.

10   Timothy Correia, et al.

11

12

13

14

15

16

17

18

19

20

21

22       /s/ Helana E. Kline              November 28, 2011

23       Helana E. Kline, RMR, CRR

24       Federal Official Court Reporter

25